UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HILARY MOUNTGORDON,<br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES COAST GUARD,<br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 21-1319 (RDM)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant United States Coast Guard ("USCG") respectfully moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7. The reasons for this motion are set forth in the attached Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Statement of Material Facts as to Which There Is No Genuine Issue ("SOF").

Dated: May 20, 2022
    Washington, D.C.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:_____/s/_____
PATRICIA MCBRIDE
Assistant United States Attorney
Judiciary Center Building
601 D Street, N.W. B Civil Division
Washington, D.C. 20530
Telephone: (202) 252-2562

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HILARY MOUNTGORDON,<br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES COAST GUARD,<br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 21-1319 (RDM) |

### DEFENDANT'S STATEMENT OF
### MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

Pursuant to Local Civil Rule 7(h)(1), Defendant, United States Coast Guard ("USCG") hereby submits the following Statement of Material Facts as To Which There Is No Genuine Dispute in support of Defendant's Motion for Summary Judgment in this action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

1.     This motion for summary is supported by the declaration of Brian Judge ("Judge Decl."). Brian Judge currently serves as a civilian Attorney by the U.S. Coast Guard. Judge Decl. ¶ 1. He has served as the Chief of the Office of Claims and Litigation within the Office of the Judge Advocate General for over eight years.. *Id.* Prior to his current assignment, Brian Judge served on active duty in the Coast Guard for over twenty-four years. *Id.*

2.     Plaintiff submitted FOIA request 2020-CGFO-01746 to the Coast Guard on April 23, 2020, and a second request on June 30, 2020. Judge Decl. ¶ 2. On July 1, 2020, Plaintiff agreed to consolidate her requests with a deadline of July 15, 2020. *Id.* The consolidated request sought the following records:

a. The Investigating Officer's Report relating to Plaintiff's complaint to the Department of Homeland Security Office of the Inspector General made on or about March 25, 2019, without exhibits or enclosures.

b. Witness statements enclosed with the Investigator Officer's Report described above.

c. A list of the Exhibits and Enclosures appended to the Investigating Officer's Report described above.

d. 2017 Coast Guard Academy ("CGA") Vital Signs Report.

e. The Final Action Memorandum issued on or about February 3, 2020 related to the Inspector General ("IG") investigation which Plaintiff initiated by complaint filed March 27, 2019. *Id.*

3.      The 2017 CGA Vital Signs Report is publicly available document and Plaintiff was provided a web address for the report.   Judge Decl. ¶ 3.   The remaining documents—the Investigator's Report, enclosed witness statements, a list of exhibits and enclosures, and the Final Action Memorandum concerning Plaintiff's complaint—are all records of the Coast Guard Leadership Development Center ("LDC").   *Id.*   The LDC located all of the documents requested by Plaintiff so there was no need to search any other offices for responsive documents.   *Id.*

4.      Plaintiff was disenrolled from the Coast Guard's Officer Candidate School ("OCS") in November 2017.  Judge Decl. ¶ 4.   OCS is a course of instruction provided by the LDC.   *Id.*   Plaintiff made a telephonic complaint to the Department of Homeland Security Office of the Inspector General ("DHS OIG") on March 25, 2019.   *Id.*   On April 1, 2019, that complaint was referred to the Coast Guard Investigative Service which further referred the complaint to the LDC.   *Id.*   On April 26, 2019, the LDC convened a single-officer administrative investigation into the complaint to provide a basis for the LDC to take action in response to the complaint.   *Id.* After reviewing the investigating officer's report, the Commanding Officer, LDC, produced a seven-page memorandum report to the DHS OIG which constituted the Coast Guard's Final Action on Plaintiff's complaint.   *Id.*

5.      The LDC Final Action Memorandum consists of findings of fact, opinions, and directive actions responsive to Plaintiff's complaint.   Judge Decl. ¶ 5.   All findings of fact, opinions, and directive actions are those of the LDC Commanding Officer; he did not incorporate any findings, opinions, or recommendations from the Investigating Officer's Report.  *Id*.  All seven pages of the Memorandum were released to Plaintiff with only the names of junior Coast Guard personnel redacted from pages 1, 4, 5, and 6.  *Id*.  These redactions were made pursuant to 5 U.S.C. § 552(b)(6) because the Coast Guard determined that release of these names would cause particular harm to clearly identifiable privacy interests.  *Id*.  Other than the name of the CGIS special agent that the Final Action Memorandum was routed through, the redacted names are those of OCS instructors or former officer candidates, most of whom are now Coast Guard officers.  *Id*.  Release of these names to the public would invade their privacy and could cause these individuals reputational harm in their personal and professional lives.  *Id*.   For example, the Final Action Memorandum states the investigating officer made allegations that an OCS instructor had bullied two officer candidates but found that "the investigation did not provide sufficient facts to make appropriate determinations and disposition" and with regard to one officer candidate "contained a bare allegation . . . without describing the conduct in question."  *Id*.  Allegations of misconduct unsupported by fact would certainly be damaging to a Coast Guard officer's career and likely personal reputation.  *Id*.  Nothing was redacted other than the junior member's names so the public can easily understand what actions the Coast Guard took in response to Plaintiff's complaint and the Investigating Officer's Report, as well as the facts and opinions those actions were based upon. *Id*.

6.      The Final Action Memorandum also notes that the investigating officer took the initiative to investigate and address issues outside the scope of the order convening the

investigation.  Judge Decl. ¶ 6.  The Investigator Officer's Report therefore contains findings of fact and opinions unresponsive to the allegations set forth in the DHS OIG complaint.  *Id*.  The Final Action Memorandum found that an examination of these complex and important issues required "greater attention, resources, and specialized training" than was available to, and conducted by, the single-officer investigation.  *Id*.  The Final Action Memorandum further noted that the Commander of Coast Guard Force Readiness Command ("FORCECOM") directed all Coast Guard Training Centers, including LDC, to establish metrics and data that would allow for a more systematic review of policy, processes, and judgment to assure inclusion and equity for meritocratic learning outcomes.  *Id*.  The Final Action Memorandum further noted that the Commanding Officer of the LDC requested and received approval from FORCECOM to form an external working group of qualified trained professionals to assess LDC's accessions practices and opportunities for improvement.  *Id*.  The Final Action Memorandum therefore clearly states that the investigating officer's opinions and recommendations do not represent those of the Coast Guard as a whole.  *Id*.

7.     The FOIA request sought the Investigating Officer's Report ("the Report") without Enclosures or Exhibits.  The Report consists of twenty-one pages that were—with one exception discussed below— withheld in their entirety pursuant to 5 U.S.C. § 552(b)(5) as a pre-decisional document covered by the deliberative process privilege.  Judge Decl. ¶ 7.  The Report contains the following statement on the first page prior to the narrative:  "This document was prepared for internal government use only. This document is pre-decisional in nature and qualifies as inter-agency/intra-agency document containing deliberative process material. In accordance with exemption 5 of section (b) of 5 U.S.C 552 (Freedom of Information Act), this material is EXEMPT FROM RELEASE TO THE PUBLIC."  *Id*.

8.    The inclusion of this statement by the investigating officer indicates the investigating officer's understanding of the character of his report as well as his expectation that the report would be exempt from release to the public under FOIA.  Judge Decl. ¶ 8.  Knowing that the report was not subject to release under FOIA may well have been one of the reasons that the investigating officer felt free to take the initiative and go beyond the scope of the convening order in his investigation and report.  *Id*.  Release of the Report might stifle such initiative in the future.  *Id*.

9.    Release of the Report would also serve to confuse the public with regard to the Coast Guard's position with regard to Plaintiff's complaint and especially with regard to issues beyond the scope of the investigation's convening order.  Judge Decl. ¶ 9.  The Final Action Memorandum, which was released with only the redaction of names, represents the Coast Guard's position in response to the DHS OIG in connection with the complaint, not the Report.  *Id*.  The Final Action Memorandum found certain portions of the Report were beyond the capabilities of the investigating officer and will be addressed by the gathering of additional data and subject to a further holistic assessment by a working group of qualified trained professionals.  *Id*.  Similarly, the public may well be confused by allegations contained in the report that were either not supported by sufficient facts or consisted only of a bare allegation.  *Id*.

10.    Although Plaintiff did not request the Report's Enclosures and Exhibits, she did request a list of the Enclosures and Exhibits to the Report.  Judge Decl. ¶ 10.  In response to this request, the portions of pages 20-21 that listed the Enclosures and Exhibits were released.  *Id*.

11.    Plaintiff requested the witness statements enclosed with the Report.  Judge Decl. ¶ 11.  Exhibit 15 to the Report was labeled as witness statements, although not all the material in this exhibit was actually a witness statement.  *Id*.  Exhibit 15 consists of thirty-eight pages which

were withheld in their entirety. *Id*. Because the investigation went beyond the scope of its intended purpose, these statements include information that was not properly part of the investigation. *Id*. Many of these statements were simply summaries of interviews of witnesses by the investigating officer, but two consist of e-mails to the investigating officer from former officer candidates, now Coast Guard officers. *Id*. These statements include statements describing their individual struggles at OCS at a highly personal level as well as candid assessments of the performances of other officer candidates or instructors some of whom remain in the Coast Guard and may serve in assignments with the witnesses in the future. *Id*. Much of the material contained in the statements consists of opinions, feelings and emotional reactions concerning the experiences of the officer candidates during a highly stressful course of instruction designed to transition them from civilian to military life. *Id*. One former officer candidate included as attachments to the e-mail the candidate's performance evaluations while at OCS and other documentation from her personnel file. *Id*. All of the information in Exhibit 15 was gathered to assist the Commanding Officer, LDC, in determining what actions to take in response to Plaintiff's complaint to DHS OIG. *Id*. Releasing this information would discourage frank and open discussion of the type of highly personal and private information necessary to arrive at informed decision making regarding allegations of supervisors mistreating junior personnel, particularly in a military accession training environment. *Id*. These pages were therefore properly withheld pursuant to the deliberative process privilege pursuant to 5 U.S.C. § 552(b)(5) and to protect clearly identifiable privacy interests pursuant to 5 U.S.C. § 552(b)(6). *Id*.

12.    Finally, Exhibit 15 includes eight pages of Uniform Code of Military Justice and Miranda/Tempia warning rights forms that are filled out and signed by four witnesses. Judge Decl. ¶ 12. These forms document the alleged misconduct the investigating officer believe the witnesses

may have been involved in, but we know from the Final Action Memorandum that no one was charged with misconduct as a result of this investigation. *Id.* The forms do not contain any actual statements by the witnesses other than checking acknowledgements of rights and an agreement to make a statement or answer questions without consulting a lawyer. *Id.* As a result, these pages are not responsive to the request and furthermore could mislead the public into believing the witnesses engaged in misconduct. *Id.* These pages were therefore properly withheld pursuant to the deliberative process privilege pursuant to 5 U.S.C. § 552(b)(5) and to protect clearly identifiable privacy interests pursuant to 5 U.S.C. § 552(b)(6). *Id.*

13.    A single page e-mail statement from a medical officer to the investigating officer describing a policy contained in the Medical Manual was produced with only the names of the two officers redacted pursuant to 5 U.S.C. § 552(b)(6). Judge Decl. ¶ 13.

Dated: May 20, 2022
        Washington, D.C.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: _____/s/_____
PATRICIA MCBRIDE
Assistant United States Attorney
Judiciary Center Building
601 D Street, N.W. B Civil Division
Washington, D.C.  20530
Telephone: (202) 252-2562

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HILARY MOUNTGORDON,<br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES COAST GUARD,<br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 21-1319 (RDM) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

Pursuant to Federal Rule of Civil Procedure ("Rule") 56(c), the United States Coast Guard ("USCG"), by and through the undersigned counsel, respectfully submits this Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment in response to the Complaint filed by Hillary Mountgordon ("Plaintiff").

### INTRODUCTION AND SUMMARY

Plaintiff commenced this action under the Freedom of Information Act, 5 U.S.C. § 552, *et seq*. ("FOIA"), seeking records pertaining to her complaint to the Department of Homeland Security Office of the Inspector General ("IG") regarding an investigation conducted into that complaint by the IG. *See* Comp. ¶ 16.   Specifically, Plaintiff had made allegations of injury through negligence of herself and other officer candidates while in training and general allegations of bullying which allegedly took place while Plaintiff attended the USCG's Officer Candidate School ("OCS"). *Id*. ¶¶ 12, 16.  Plaintiff claims that she was injured while at OCS during a training accident and was thereafter "bullied" by the officer in charge of her unit. *Id*. ¶ 12.  The bullying led to her ultimate discharge from OCS due to the accumulation of a high number of demerits

issued to her by officers of the OCS program.  *Id*.  13.

Plaintiff was ultimately recommended for removal from the OCS program by members of the OCS staff and was sent to a review board.  *Id*.  Plaintiff claims that the officer who primarily bullied her was also the officer who prepared all of the materials given to the board.  ¶ 14.  The review board removed Plaintiff from the OCS program.  *Id*. Plaintiff then chose to be released from military service and filed a complaint with the IG on March 25, 2019, making allegations that she was injured through negligence and that she had been bullied.  *Id*. ¶ 16.  The IG's office conducted an investigation of Plaintiff's complaints.  After interviewing witnesses, including Plaintiff, an investigator generated a report that included witness interviews which was used by the Coast Guard to response to the IG report.  *Id*. ¶ 17.

Plaintiff's two FOIA requests received by the agency on April 23, 2020 and June 30, 2020 were consolidated by agreement on July 15, 2020.  *See* Declaration of Brian Judge ("Judge Decl.") ¶ 2.  The consolidated request sought the IG Report relating to Plaintiff's complaint to the DHS IG without exhibits or enclosures, witness statements, a list of exhibits and enclosures, 2017 Coast Guard Academy ("CGA") Vital Signs Report, and the Final Action Memorandum issued on or about February 3, 2020 related to the IG investigation.  *Id*.  The 2017 CGA Vital Signs Report is a publicly available document and the Coast Guard provided Plaintiff a web address for the report. *Id*. ¶ 3.  The FOIA analyst determined that the remaining document, the IG report, enclosed witness statements, a list of exhibits and enclosures, and the Final Action Memorandum concerning Plaintiff's complaint were all records of the Coast Guard Leadership Development Center ("LDC").  *Id*.  The FOIA Analyst located all of the documents requested in Plaintiff's FOIA at the LDC.  *Id*.

Because Defendant's search was reasonably calculated to return responsive records——

and did in fact located all the requested records, it was an adequate search, and Defendant is entitled to summary judgment on that issue. Moreover, Defendant is entitled to summary judgment on its withholdings because the responsive records were properly redacted or withheld in their entirety under FOIA Exemptions 6, 7(C), and 7(A) as the records contained personal identifiable information ("PII") of third-party individuals and USCG employees, disclosure of which "would constitute a clearly unwarranted invasion of personal privacy," and information compiled for law enforcement purposes, disclosure of which "could reasonably be expected to interfere with enforcement proceedings."

## **BACKGROUND**

Plaintiff submitted FOIA request 2020-CGFO-01746 to the Coast Guard on April 23, 2020, and a second request on June 30, 2020. On July 1, 2020, Ms. Mountgordon agreed to consolidate her requests with a deadline of July 15, 2020. The consolidated request sought the following records:

a. The Investigating Officer's Report relating to Ms. Mountgordon's complaint to the Department of Homeland Security Office of the Inspector General made on or about March 25, 2019, without exhibits or enclosures.

b. Witness statements enclosed with the Investigator Officer's Report described above.

c. A list of the Exhibits and Enclosures appended to the Investigating Officer's Report described above.

d. 2017 Coast Guard Academy ("CGA") Vital Signs Report.

e. The Final Action Memorandum issued on or about February 3, 2020 related to the Inspector General ("IG") investigation which Ms. Mountgordon initiated by complaint filed March 27, 2019.

Plaintiff appears to have a dispute with USCG because she alleges that she was treated unfairly at the CGA after she was injured in a training accident. *See* Comp. ¶ 12-13. She claims that after her injury, the officer in charge of her unit bullied her and gave her a large number of

demerits.  *Id*.  As a result of accumulating a large number of demerits, Plaintiff was recommended for removal from the OCS program by members of the OCS staff and ultimately removed from the program.  *Id*.  ¶ 14.  Plaintiff filed a complaint with the IG, DHS alleging that she was injured through negligence and that she had been bullied.  *Id*.  ¶ 16.  The IG conducted an investigation and generated a report that included witness statements, however, the IG did not provide a copy of the report to her.  *Id*. ¶¶ 16-17.

Ms. Mountgordon submitted FOIA request 2020-CGFO-01746 to the Coast Guard on April 23, 2020, and a second request on June 30, 2020.  Judge Decl. ¶ 2.  On July 1, 2020, Ms. Mountgordon agreed to consolidate her requests with a deadline of July 15, 2020.  *Id*.  The consolidated request sought the IG report made on or about March 25, 2019, without exhibits or enclosures, witness statements enclosed with the Investigator Officer's Report, a list of the exhibits and enclosures appended to the report, the 2017 CGA Vital Signs Report, and the Final Action Memorandum issued on or about February 3, 2020 related to the IG investigation.  *Id*.

The 2017 CGA Vital Signs Report is a publicly available document and the Coast Guard provided Plaintiff a web address for the report.  *Id*. ¶ 3.  The FOIA analyst located all of the documents requested in Plaintiff's FOIA at the LDC.  *Id*.  The Report consisted of twenty-one pages that was withheld in its entirety pursuant to 5 U.S.C. § 552(b)(5) as a pre-decisional document covered by the deliberative process privilege.   Although Plaintiff did not request the Report's Enclosures and Exhibits, she did request a list of the Enclosures and Exhibits to the Report.  In response to this request, the portions of pages 20-21 of the Report that listed the Enclosures and Exhibits were released.  Judge Decl. ¶ 10.

Plaintiff requested the witness statements enclosed with the Report.  *Id*.  ¶ 10.  Exhibit 15 to the Report was labeled as witness statements, although not all the material in this exhibit was actually a witness statement.  *Id*.  Exhibit 15 consists of thirty-eight pages which were withheld in their entirety.  *Id*.  Because the investigation went beyond the scope of its intended purpose, these statements include information that was not properly part of the investigation.  *Id*.  Many of these statements were simply summaries of interviews of witnesses by the investigating officer, but two

consist of e-mails to the investigating officer from former officer candidates, now Coast Guard officers. *Id*. These statements include statements describing their individual struggles at OCS at a highly personal level as well as candid assessments of the performances of other officer candidates or instructors some of whom remain in the Coast Guard and may serve in assignments with the witnesses in the future. *Id*. Much of the material contained in the statements consists of opinions, feelings and emotional reactions concerning the experiences of the officer candidates during a highly stressful course of instruction designed to transition them from civilian to military life. *Id*. One former officer candidate included as attachments to the e-mail the candidate's performance evaluations while at OCS and other documentation from her personnel file. These pages were therefore properly withheld pursuant to the deliberative process privilege pursuant to 5 U.S.C. § 552(b)(5) and to protect clearly identifiable privacy interests pursuant to 5 U.S.C. § 552(b)(6).

In addition, Exhibit 15 includes eight pages of Uniform Code of Military Justice and Miranda/Tempia warning rights forms that were filled out and signed by four witnesses. *Id*. ¶ 12. These forms document the alleged misconduct the investigating officer believed the witnesses may have been involved in, but we know from the Final Action Memorandum that no one was charged with misconduct as a result of this investigation. The forms do not contain any actual statements by the witnesses other than checking acknowledgements of rights and an agreement to make a statement or answer questions without consulting a lawyer. As a result, these pages are not responsive to the request and furthermore could mislead the public into believing the witnesses engaged in misconduct. These pages were therefore properly withheld pursuant to the deliberative process privilege pursuant to 5 U.S.C. § 552(b)(5) and to protect clearly identifiable privacy interests pursuant to 5 U.S.C. § 552(b)(6). A single page e-mail statement from a medical officer to the investigating officer describing a policy contained in the Medical Manual was produced with only the names of the two officers redacted pursuant to 5 U.S.C. § 552(b)(6). Judge Decl. ¶ 13.

## I. **LEGAL STANDARD**

### SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322. A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

In a FOIA action, a district court has jurisdiction only when an agency has improperly withheld agency records. 5 U.S.C. § 552(a)(4)(B). FOIA, however, does not allow the public to have unfettered access to government files. *McCutchen v. United States Dep't of Health and Human Services*, 30 F.3d 183, 184 (D.C. Cir. 1994). Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements. *Department of Defense v. FLRA*, 510 U.S. 487, 494 (1994). The FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions. 5 U.S.C. § 552(b); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989). To protect materials from disclosure, the agency must show that they come within one of the FOIA exemptions. *Public Citizen Health Research Group v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999).

Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under the FOIA and the FOIA claim is moot. *Perry v. Block*,

684 F.2d 121, 125 (D.C. Cir. 1982); *Muhammad v. U.S. Customs & Border Prot.*, 559 F. Supp. 2d

5, 7-8 (D.D.C. 2008).  Accordingly, summary judgment is appropriate in a FOIA action, such as

this one, where the pleadings, together with the declarations, demonstrate that there are no material

facts in dispute and that the requested information has been produced or is exempted from

disclosure, and that the agency, as the moving party, is entitled to judgment as a matter of law.

Fed. R Civ. P. 56(a); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir.

2001); *Weisberg v. United States Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980); *Fischer v.

U.S. Dep't of Justice*, 596 F.Supp.2d 34, 42 (D.D.C.  2009) ("summary judgment may be granted

to the government if 'the agency proves that it has fully discharged its obligations under the FOIA,

after the underlying facts and the inferences to be drawn from them are construed in the light most

favorable to the FOIA requester'") (citation omitted).

The "vast majority" of FOIA cases are decided on motions for summary judgment.  *See

Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *Media Research Ctr. v.

U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and

appropriately are decided on motions for summary judgment."); *Citizens for Responsibility &

Ethics in Washington v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) ("*CREW*").

To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations.

*See McGehee v. C.I.A.*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Vaughn v. Rosen*, 484 F.2d 820

(D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974); *Media Research Ctr.*, 818 F. Supp. 2d at 137.

"[T]he Court may award summary judgment solely on the basis of information provided by the

department or agency in declarations when the declarations describe 'the documents and the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80

(quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

As demonstrated below, Defendant has satisfied its obligation to conduct an adequate

search for records responsive to Plaintiff's FOIA request through the search conducted by USCG.

USCG reviewed documents and disclosed all non-exempt responsive records, and has sufficiently

justified its withholding of exempt information pursuant to FOIA exemptions b (5) and b(6).  Thus,

there is no genuine issue as to any material fact, and the Defendants are entitled to judgment as a

matter of law.

## II.    ADEQUACY OF THE SEARCH

In responding to a FOIA request, an agency must conduct a reasonable search for

responsive records. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Weisberg v.

United States Dep't of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  An agency is not required

to search every record system but need only search those systems in which it believes responsive

records are likely to be located. *Oglesby*, 920 F.2d at 68.  "An agency fulfills its obligations under

FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to

uncover all relevant documents." *Fischer v. U.S. Dept. of Justice*, 596 F.Supp.2d 34, 42 (D.D.C.

2009) (quoting *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)

(internal citation and quotation marks omitted)).

Thus, an agency may conduct an adequate search under FOIA without locating any

responsive records.  Furthermore, even when a requested document indisputably exists or once

existed, summary judgment will not be defeated by an unsuccessful search for the document so

long as the search was diligent and reasonable.  *See Nation Magazine, Washington Bureau v. U.S.

Customs Service*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  Thus, "[t]he search need only be

reasonable; it does not have to be exhaustive." *Miller v. United States Dep't of State*, 779 F.2d 1378, 1383 (8ᵗʰ Cir. 1985) (citing *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68; *see also SafeCard Services v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). An agency may prove the adequacy of its search through a reasonably detailed declaration. *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982); *Goland v. CIA,* 607 F.2d 339, 352 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980); *Miller*, 779 F.2d at 1383 ("An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith"). Although the agency has the burden of proof on the adequacy of its search, the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir.), *cert. denied*, 513 U.S. 823 (1994) (quoting *SafeCard Services*, 926 F.2d at 1200).

Thus, once the agency has met its burden regarding the adequacy of its search, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. *Miller*, 779 F.2d at 1383. A requester may not rebut agency affidavits with purely speculative allegations. *See Carney*, 19 F.3d at 813; *SafeCard Services*, 926 F.2d at 1200; *Maynard v. CIA*, 986 F.2d 547, 559-60 (1st Cir. 1993). As discussed below, the Defendant has met the reasonableness standard in conducting a search for records concerning Plaintiff's FOIA request and is therefore entitled to summary judgment.

### III.    USCG CONDUCTED AN ADEQUATE SEARCH FOR PLAINTIFF'S REQUEST FOR INFORMATION

In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974), the Defendant supports this motion for summary judgment by submitting the declaration, and exhibit of Brian Judge has served as the Chief of the Office of Claims and Litigation within the Office of the Judge Advocate General for over eight years.  This declaration, attachments, and exhibits provides the Court and Plaintiff with an explanation of the procedures used by the USCG to search for records responsive to Plaintiff's FOIA request.

Ms. Mountgordon submitted FOIA request 2020-CGFO-01746 to the Coast Guard on April 23, 2020, and a second request on June 30, 2020.  Declaration of Brian Judge ("Judge Decl.") ¶ 2. On July 1, 2020, Ms. Mountgordon agreed to consolidate her requests with a deadline of July 15, 2020.  *Id*.  Specifically, Plaintiff requested, the Investigator's Report, enclosed witness statements, a list of exhibits and enclosures, the 2017 CGA Vital Signs Report and the Final Action Memorandum concerning Ms. Mountgordon's complaint.  *Id*. ¶¶ 19-20.  With a very specific list of documents requested, the search for responsive led to the location where records of this type are located, the Coast Guard Leadership Development Center ("LDC"), the Coast Guard unit that created all of the documents except for the 2017 CGA Vital Signs Report which is a publically available document.  *Id*. ¶ 3.

 "[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance [with FOIA].'" *Wolf v. CIA*, 569 F. Supp.2d 1, 7 (D.D.C. 2008).  Brian Judge's description of USCG's search of records demonstrates that the agency has satisfied that standard.  Thus, the USCG is entitled to summary judgment on Plaintiff's claims regarding the USCG's search.

## IV.    THE USCG PROPERLY APPLIED FOIA EXEMPTIONS.

"[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Research Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).  The *Vaughn* declaration submitted by USCG and DHS provide the Court and Plaintiff with an explanation of the justification for withholding records in full or in part pursuant to FOIA Exemptions (b)5 and (b)6, 5 U.S.C. §§ 552 (b)(5) and (b)(6). Because no non-exempt responsive records have been improperly withheld from Plaintiff, summary judgment should be entered in favor of Defendant.

**Sufficiency of the Agency's *Vaughn* Declarations.**

Summary judgment in FOIA cases may be awarded "based solely on the information provided in [agency] affidavits or declarations when the affidavits or declaration describe 'the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"  *Fischer*, 596 F.Supp.2d at 42 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  Typically, the agency's declarations or affidavits are referred to as a *Vaughn* index, after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).  The purpose of a *Vaughn* index is "to permit adequate adversary testing of the agency's claimed right to an exemption." *NTEU v. Customs*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Central v. United States Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977), and *Vaughn*, 484 F.2d at 828).  Thus, the index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *NTEU*, 802 F.2d at 527 n.9.

**USCG'S *Vaughn* Declaration**

In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), Brian Judge executed a declaration to support this motion for summary judgment. *See* Judge Decl. Brian Judge is currently the Chief of Staff, Fifth Coast Guard District. Judge Decl.¶ 1. He is well-qualified to explain the USCG's justification for its withholdings. Due to his experience, he is familiar with the procedures followed by the USCG in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. §552a. *Id.* Specifically, he is aware of the USCG's response to Plaintiff's FOIA request for records because he was the person responsible for the partial denial of her request. *Id.*

## ARGUMENT

### A. Defendant Conducted an Adequate Search

Because a fundamental principle behind FOIA "is public access to government documents," courts require "agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989)); *Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998). Therefore, an agency only "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Id.* (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Although there "is no requirement that an agency search every record system," an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68.

To demonstrate that it has performed an adequate search for responsive documents, an

agency must submit a reasonably detailed affidavit describing the search.  *See Defs. of Wildlife v. U.S. Border Patrol*, 623 F.Supp.2d 83, 91 (D. D.C. 2009).  An affidavit is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed and aver[s] that all files likely to contain responsive materials (if such records exist) were searched."  *Oglesby*, 920 F.2d at 68; *see also Defs. of Wildlife*, 623 F.Supp.2d at 92 (finding declaration deficient where it failed to detail the types of files searched, the filing methods, and the search terms used).  However, agency affidavits that "do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized" are insufficient to support summary judgment. *Weisberg*, 627 F.2d at 371.  Moreover, conclusory assertions about the agency's thoroughness are insufficient.  *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1121 (D.C. Cir. 2007); *Nat'l Sec. Counselors v. CIA*, 849 F.Supp.2d 6, 11 (D. D.C. 2012) ("The affidavit must explain the scope and method of [its] search in a non-conclusory fashion.").

"Agency affidavits are accorded a presumption of good faith," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197 1200 (D.C. Cir. 1991), which can be rebutted with "evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981), or when "a review of the record raises substantial doubt" that certain materials were overlooked despite well-defined requests.  *Valencia-Lucena*, 180 F.3d at 326 (citing *Founding Church of Scientology, Inc. v. National Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1981); *see also Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1981) ("If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.").

The USCG search, which is described in the Judge Declaration, clearly satisfied its obligations under the FOIA.  An agency's search will be deemed reasonable if the agency searches

13

the "places most likely to contain responsive documents." *Carter, Fullerton & Hayes v. FTC*, 637 F. Supp. 2d 1, 7 (D.D.C. 2009). Here, as detailed in the Judge Declaration, the USCG's search for responsive records at the LDC which contained the requested records. Judge Decl. ¶ 3. These files were subsequently sent to be reviewed for exempt information.

Plaintiff alleges that the USCG failed to perform an adequate search, but it is clear from the actions taken by USCG that it located the exact records requested in Plaintiff's FOIA request at the location that housed those records, the LDC. *Id.* ¶¶ 5-6. As such, the USCG completed an adequate search reasonably calculated to locate all responsive records to Plaintiff's request. In sum, the USCG performed a more than adequate search for records responsive to Plaintiff's request. Therefore, because the USCG's search was reasonably calculated to return responsive records, it was adequate under FOIA and summary judgment is appropriate.

**B. Defendants Properly Invoked FOIA Exemption 5**

FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption shields documents of the type that would be privileged in the civil discovery context, including documents which would disclose the deliberative process of agency decision-making. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). The purpose of the deliberative process privilege is "to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Carter v. Department of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002) (citations omitted); *see also, e.g., Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Kidd v. DOJ*, 362 F. Supp. 2d 291, 296 (D.D.C. 2005) (protecting documents on basis that disclosure would "inhibit drafters from freely exchanging

14

ideas, language choice, and comments in drafting documents") (internal quotation marks omitted).

Thus, the privilege is intended to "'prevent injury to the quality of agency decisions' by ensuring that the 'frank discussion of legal or policy matters' in writing, within the agency, is not inhibited by public disclosure." *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997) (citations omitted); *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 16 n.19 (D.D.C. 1998) (concluding that Exemption 5 is designed to prevent chilling of agency deliberations). To fall within the deliberative process privilege, "a document must be both (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning "it must actually be related to the process by which policies are formulated." *Jordan v. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978). A document is predecisional if it was "prepared in order to assist an agency decision maker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975). Information withheld by an agency is "deliberative" if "disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987).

Documents covered by the deliberative process privilege include those "reflecting advisory opinions, recommendations and deliberations compromising part of the process by which government[al] decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 150 (quotations omitted). As the Supreme Court has explained: the deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who

make them within the Government. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (internal quotation marks and citations omitted). In discussing the deliberative process privilege, the D.C. Circuit has explained that there are essentially three policy bases for this privilege. First, it protects creative debate and candid consideration of alternatives within an agency, and, thereby, improves the quality of agency policy decisions. Second, it protects the public from the confusion that would result from premature exposure to discussions occurring before policies affecting it had actually been settled upon. And third, it protects the integrity of the decision-making process itself by confirming that officials should be judged by what they decided, not for matters they considered before making up their minds. *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).

In this case, the FOIA request sought the Investigating Officer's Report ("the Report") without enclosures or exhibits. The Report consists of twenty-one pages that were withheld in their entirety pursuant to 5 U.S.C. § 552(b)(5) as a pre-decisional document covered by the deliberative process privilege. To fall within the deliberative process privilege, "a document must be both (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning "it must actually be related to the process by which policies are formulated." *Jordan v. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978). A document is predecisional if it was "prepared in order to assist an agency decision maker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975). Information withheld by an agency is "deliberative" if "disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987).

The Report is predecisional because it was specifically "prepared in order to assist an agency decision maker in arriving at his decision"—in this case to assist the Commanding Officer of the LDC in determining how to response to IG investigation initiated by Plaintiff's complaint. Judge Decl. ¶¶ 4-5. The Commanding Officer convened the investigation and later reviewed and used the Report to create his Final Action Memo that documented his response to the IG investigation. *Id*. The Report was therefore predecisional to the Final Action Memo.

The Report was also deliberative in that it contained opinions and recommendations concerning how the Commanding Officer should respond to the allegations in Plaintiff's IG complaint as well as other climate and culture issues at the OCS. Judge Decl. ¶¶ 5-6. The Report consequently contains "advisory opinions, recommendations and deliberations compromising part of the process by which government . . . are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 150 (quotations omitted). In addition, the investigating officer took the initiative to investigate and address issues outside the scope of the order convening his investigation making it the type of "open and frank discussion" the Supreme Court opined should be protected by the deliberative process privilege. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. at 8-9 (2001). Nonetheless, the LDC Commanding Officer made his own findings, opinions and directive actions in the Final Action Memo and those are the actions of the Coast Guard, not the investigating officer's Report. *Russell v. Dep't of the Air Force*, 682 F.2d at 1048. In fact, the Commanding Officer found that the issues raised by the Report were so complex and important that they required "greater attention, resources, and specialized training" than was available to the investigating officer. Judge Decl. ¶ 6. The Commanding Officer also noted that the Coast Guard had already directed all Coast Guard Training Centers to establish metrics and data that would allow for a more systemic review and improve learning outcomes. *Id*. Withholding the Report

17

therefore serves another purpose of the deliberative process privilege by protecting the public from the confusion resulting from premature exposure to discussions occurring before policies affecting it had actually been settled upon. *Russell v. Dep't of the Air Force*, 682 F.2d at 1048.  In sum, withholding the Report protected the Coast Guard's deliberative process used to respond to the IG investigation.

## C. Defendant Properly Invoked FOIA Exemption 6 to Protect PII

The agency withheld in its responses to the FOIA request, pursuant to Exemption 6, the names of OCS instructors or former officer candidates, most of whom are now Coast Guard officers, from the Final Action Memo and the names of two officers from a single page e-mail statement from a medical officer to the investigating officer describing a policy contained in the Medical Manual redacted pursuant to 5 U.S.C. § 552(b)(6).  Judge Decl. ¶¶ 5, 12.[1]  The individuals have a significant privacy interest in being associated with records compiled as part of enforcement efforts due to possible unwanted contact, harassment, or stigma for being associated. Judge Decl. ¶ 11.  Releasing the identities of these individuals, however, does not shed light on the agency's activities because it does not add to the public's understanding of the agency's activities.  *Id*. Accordingly, this privacy interest outweighs the nonexistent public interest.  *Id*.  Accordingly, USCG determined that the significant privacy interest outweighed the nonexistent public interest. The individuals have a significant privacy interest in being associated with records compiled as part of an enforcement matter due to possible unwanted contact, harassment, or stigma for being

---

[1] The Report and Exhibit 15 also specifically names OCS instructors and former officer candidates and includes material from the personnel files of former officer candidates and other documents containing matters that would constitute an unwarranted invasion of personal privacy if disclosed including allegations of misconduct not supported by facts, summaries of witness statements of individual officer candidates struggles at OCS and their candid assessments of other officer candidates and OCS instructors' performance.  Batson Decl. ¶¶ 11-12.

associated.  Releasing the identities of these individuals, however, does not shed light on the agency's activities because it does not add to the public's understanding of the agency's activities. *Id*.  The Final Action Memo contains the Coast Guard's findings of fact and the actions taken in response to the IG investigation; the specific names of junior officers and officer candidates will add nothing to that understanding.

 For information to be withheld properly under Exemption 6, it must first fall within the category of "personnel and medical files and similar files."  5 U.S.C. § 552(b)(6).  The United States Supreme Court in *United States Dep't of State v. Washington Post Co.*, held that Congress intended the term "similar files" to be interpreted broadly, rather than narrowly.  456 U.S. 595, 599-603 (1982).  The Court stated that the threshold requirement for Exemption 6 is satisfied if the information "applies to a particular individual."  *Id*. at 602.  In the records at issue here, the redacted information pertains to individuals.

In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004).  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).  "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose."

*Beck*, 997 F.2d at 1492.

With respect to assessing the privacy interests at stake, the relevant inquiry is whether public access to the private individuals' names would violate a viable privacy interest of the subject of such information. As a general rule, the threat to privacy must be real rather than speculative. Courts have held "[w]here there is a substantial probability that disclosure will cause an interference with personal privacy, it matters not that there may be two or three links in the causal chain." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 878 (D.C. Cir. 1989) [hereinafter NARFE]; *see also, e.g., Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 167-70 (2003) (specifically taking into account the consequences of FOIA disclosure, including "public exploitation" of the records by either the requester or others). Here, USCG released the Final Action Memo after redacting names (Judge Decl. ¶ 1) and a single page e-mail statement from a medical officer to the investigating officer describing a policy contained in the Medical Manual was produced with only the names of the two officers redacted pursuant to 5 U.S.C. § 552(b)(6). Judge Decl. ¶ 13. USCG has determined that the junior officers and non-government individuals—some officer candidates did not become Coast Guard officers— have privacy interest that are more than *de minimis*.

To determine whether Exemption 6 applies to the information at issue to prevent a clearly unwarranted invasion of personal privacy, the privacy interests of affected individuals are balanced against the public interest in disclosure. "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492

(D.C. Cir. 1993) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).  "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose."  *Beck*, 997 F.2d at 1492.

### **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment should be granted.

Dated: May 20, 2022
      Washington, D.C.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:_____/s/_____
PATRICIA MCBRIDE
Assistant United States Attorney
Judiciary Center Building
601 D Street, N.W. B Civil Division
Washington, D.C.  20530
Telephone: (202) 252-2562

## **CERTIFICATE OF SERVICE**

I hereby certify that on or before May 23, 2022, a copy of the foregoing was mailed to Plaintiff by United States mail, marked for delivery to:

Hilary Mountgordon, Esq. *pro se*
FL. Bar No. 100241
9 Lake Vista Court
Lake Villa, IL 60046
708-613-7710
hilary.mountgordon@gmail.com

*/s/ Patricia K. McBride*
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HILARY MOUNTGORDON, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-1319 (RDM) |
| | ) | |
| UNITED STATES COAST GUARD, | ) | |
| *Defendant*. | ) | |

**[PROPOSED] ORDER**

Upon consideration of Defendant's Motion for Summary Judgment; any opposition papers; and the entire record herein, the Court hereby ORDERS that:

1. Defendant's Motion is GRANTED;

2. Summary Judgment is ENTERED for Defendant as to all Counts.

SO ORDERED.

Date:_____

_____
United States District Judge