# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

HILARY MOUNTGORDON,

       *Plaintiff*,

     v.

UNITED STATES COAST GUARD,

       *Defendant.*

Civil Action No. 21-1319 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Hilary Mountgordon brings this Freedom of Information Act ("FOIA") action against the United States Coast Guard. Before the Court are the parties' cross motions for summary judgment. Dkt. 14; Dkt. 22; Dkt. 23. The dispute centers on the Coast Guard's application of two exemptions to three sets of records.

For reasons that will become apparent below, this case brings to mind John Wooden's admonition: "If you don't have time to do it right, when will you have time to do it over?" Here, the Coast Guard's motion for summary judgment is poorly supported and lacking essential detail. Many of its withholdings are likely proper, but the Coast Guard has not taken the time to support its position. That means more work for the Coast Guard, Plaintiff's counsel, and the Court. And, more importantly, it also means unnecessary delay, which is antithetical to FOIA. Although the Court will provide the Coast Guard with an opportunity to fill in at least some of the gaps left in its initial motion—largely because the withheld information implicates the interests of third parties, who cannot be blamed for the Coast Guard's failings—this is not a process that can continue indefinitely. FOIA does not permit an agency to make a half-hearted

effort with the expectation that, if unconvincing, it can simply "do it over"—again and again, until the Court is satisfied.

So, for the reasons set forth below, the Court will **GRANT** in part and **DENY** in part Defendant's motion for summary judgment, Dkt. 14, and will **GRANT** in part and **DENY** in part Plaintiff's cross-motion for summary judgment, Dkt. 22; Dkt. 23.

## I. BACKGROUND

From July to November 2017, Plaintiff was an officer candidate enrolled in the Coast Guard's Officer Candidate School ("OCS"). Dkt. 1 at 3 (Compl. ¶ 12). During her training, Plaintiff allegedly injured her leg. *Id.* Plaintiff further alleges that, after she sustained that injury, "the officer in charge of her unit began bullying her" by issuing "a large[] number of demerits," culminating in a recommendation that she be removed from the OCS program. *Id.* at 3–4 (Compl. ¶¶ 12–14). Following proceedings before a review board, Plaintiff was removed from OCS and given a choice "between service as an enlisted member" (as opposed to serving as a commissioned officer) or "release[] from her remaining service obligation." *Id.* at 4 (Compl. ¶¶ 14–15). Plaintiff chose to be released from service. *Id.*

A year and a half later, Plaintiff made a telephonic complaint to the Department of Homeland Security's Office of the Inspector General ("OIG"), alleging "injury through negligence of herself and other officer candidates while in training and general allegations of bullying" at OCS. *Id.* at 5 (Compl. ¶ 16). Plaintiff's OIG complaint was referred to the Coast Guard Investigative Service, which further referred the complaint to the Coast Guard Leadership Development Center ("LDC"). Dkt. 14 at 3 (Def.'s SUMF). The LDC appointed an officer to conduct an administrative investigation into Plaintiff's complaint. Dkt. 14-1 at 2 (Judge Decl. ¶ 4). After receiving the investigating officer's report, the Commanding Officer of the LDC,

Captain A.E. Waters, reviewed the report and produced a seven-page memorandum, which the Coast Guard sent to the DHS OIG. *Id.* at 2–3 (Judge Decl. ¶¶ 4–5); *Id.* at 9 (Ex. 1). That memorandum constituted the Coast Guard's "Final Action on Ms. Mountgordon's complaint." *Id.* at 2 (Judge Decl. ¶ 4).

The following year, Plaintiff submitted two later-consolidated FOIA requests to the Coast Guard, seeking records related to the internal investigation and handling of her OIG complaint. Dkt. 14 at 2 (Def.'s SUMF ¶ 2). More specifically, Plaintiff's consolidated request sought five categories of records: (1) the investigating officer's initial report; (2) any witness statements that accompanied the investigative report; (3) a list of the exhibits and enclosures appended to the Report; (4) the 2017 Coast Guard Academy ("CGA") Vital Signs Report; and (5) the Final Action Memorandum produced by the LDC commanding officer. *Id.* at 2–3 (Def.'s SUMF ¶ 2).

In response, the agency provided Plaintiff with a link to access the 2017 CGA Vital Signs Report, which is a publicly available document, *see* Dkt. 1-5 at 10 (Ex. D), and successfully located the remaining records. With respect to the remaining four records, the Coast Guard produced one record in full, one record in part, and withheld two records in their entirety. First, the Coast Guard provided Plaintiff with the full list of exhibits and enclosures appended to the Report. *See* Dkt. 14-1 at 5 (Judge Decl. ¶ 10). That list is not at issue in this litigation. Second, the Coast Guard provided Plaintiff with the full Final Action Memorandum, redacting only the names and ranks of "junior Coast Guard personnel" pursuant to FOIA Exemption 6. *See id.* at 3 (Judge Decl. ¶ 5). Third, the Coast Guard withheld in its entirety the investigative report pursuant to FOIA Exemption 5's deliberative-process privilege. Dkt. 14 at 24; Dkt. 24 at 7. Finally, the Coast Guard withheld, also in their entirety, the witness statements that accompanied

the investigative report pursuant to FOIA Exemption 5's deliberative-process privilege and Exemption 6.  Dkt. 24 at 7, 9–14.

A note about the witness statements:  Throughout this litigation, the parties refer to the witness statements as "Exhibit 15," but, as the Coast Guard observes, "not all the material in . . . [E]xhibit [15] [is] actually a witness statement."  Dkt. 14 at 12.  Exhibit 15 consists of 38 pages: 14 pages of witness statement summaries; 8 pages of rights warning forms (essentially the Coast Guard's version of a *Miranda* waiver) signed by four witnesses; 15 pages of emails sent by then-officer candidates to the officer conducting the administrative investigation, including a six-page email (along with an 8 page performance evaluation) from one officer candidate, and a second one-page email from another officer candidate; and a one-page email from a medical officer to the investigating officer describing a policy contained in the Coast Guard's medical manual.  Dkt. 14-1 at 5–7 (Judge Decl. ¶¶ 11–12); Dkt. 24 at 9–14.  The Coast Guard withheld all of Exhibit 15, with the exception of the email to the medical officer, which the agency produced with only the names of the officers redacted pursuant to Exemption 6.  Dkt. 24 at 7.[1]

Plaintiff filed this suit *pro se* on May 4, 2021, seeking an order compelling the Coast Guard to disclose "any and all non-exempt records to Plaintiff's FOIA request."  Dkt. 1 at 13 (Compl.).  After the Coast Guard moved for summary judgment, Dkt. 14, counsel appeared on behalf of Plaintiff and both responded the Coast Guard's motion, Dkt. 22, and cross-moved for summary judgment, Dkt. 23.  Because the Coast Guard provided Plaintiff with the web address for the 2017 Vital Signs Report and with a copy of the list of exhibits and enclosures appended to

---

[1] The Coast Guard at times seems to refer to this medical officer's email as *part of* Exhibit 15 and, at other times, as something separate.  The Court has not reviewed Exhibit 15, but it appears that the email statement is indeed part of the Exhibit 15—otherwise, the Coast Guard's description of Exhibit 15's contents would account for just 37, and not 38, pages of material.  *See* Dkt. 24 at 9–13.

the investigative report, the parties' dispute concerns only the investigative report itself, which

was withheld in full; the witness statements and related records, which were withheld in full; and

the Final Action Memorandum, which was withheld in part.  Both motions are fully briefed and

ripe for the Court's consideration.

## II.  LEGAL STANDARD

The Freedom of Information Act is premised on the notion that an informed citizenry is

"vital to the functioning of a democratic society, needed to check against corruption and to hold

the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214,

242 (1978).  It, thus, mandates that an agency disclose records on request, unless they fall within

one of nine exemptions.  "These exemptions are explicitly made exclusive and must be narrowly

construed."  *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (internal citations and quotation

marks omitted).

FOIA cases are typically resolved on motions for summary judgment under Federal Rule

of Civil Procedure 56.  *See, e.g.*, *Shapiro v. Dep't of Just.*, 153 F. Supp. 3d 253, 268 (D.D.C.

2016).  To prevail on a summary judgment motion, the moving party must demonstrate that there

are no genuine issues of material fact and that he or she is entitled to judgment as a matter of

law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In a FOIA

action, "the Court may award summary judgment to an agency solely on the basis of information

provided in affidavits or declarations that describe '. . . the justifications for nondisclosure [of

records] with reasonably specific detail . . . and are not controverted by either contrary evidence

in the record nor by evidence of agency bad faith.'"  *Thomas v. FCC*, 534 F. Supp. 2d 144, 145

(D.D.C. 2008) (alterations in original) (quoting *Military Audit Project v. Casey*, 656 F.2d 724,

738 (D.C. Cir. 1981)).  Accordingly, "[s]ummary judgment is warranted when the agency's

affidavits 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 7 (D.C. Cir. 2014) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).

The Court reviews the agency's decision to withhold records or portions thereof *de novo*, and the agency bears the burden of sustaining its action.  *See* 5 U.S.C. § 552(a)(4)(B).

## III.  ANALYSIS

Before turning to the disputed issues, the Court pauses to note that the Coast Guard performed an adequate search for the records Plaintiff has requested.  Although the adequacy of a search is not generally determined based on "the fruits of the search," *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003), here, the Coast Guard located the specific records that Plaintiff requested, Dkt. 14-1 at 2 (Judge Decl. ¶ 3).  Moreover, there is no dispute that—with the exception of the 2017 CGA Vital Signs Report, which is a public record that was made available to Plaintiff—those are records maintained by the LDC.  *Id.*  Nor is there any dispute that the LDC searched for and "located all of the documents requested by [Plaintiff]," obviating the need for any further search for responsive records.  *Id.*

The Court, accordingly, concludes that the Coast Guard conducted a search that was not only "calculated to locate responsive records," *Bernegger v. Exec. Off. for U.S. Att'ys*, 334 F. Supp. 3d 74, 86, but that did, in fact, locate all responsive records.  The Court will therefore grant the Coast Guard's motion for summary judgment with respect to the adequacy of its search. With that narrow holding established, the Court moves on to the various withholdings at issue in this case.

6

A.      **FOIA Exemptions 5 and 6**

The Coast Guard withheld all or portions of the records at issue here pursuant to FOIA

Exemptions 5 and 6.[2]

1.      *Exemption 5*

FOIA Exemption 5 permits the withholding of "inter-agency or intra-agency

memorandums or letters that would not be available by law to a party other than an agency in

litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption encompasses "the privileges

available to Government agencies in civil litigation," *U.S. Fish & Wildlife Serv. v. Sierra Club,*

*Inc.*, 141 S. Ct. 777, 783 (2021), including "materials which would be protected under the

attorney-client privilege, the attorney work-product privilege, or the executive deliberative

process privilege," *Tax'n With Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981)

(internal quotation marks and citations omitted).

Here, the Coast Guard invokes the deliberative-process privilege, which protects

"documents reflecting advisory opinions, recommendations[,] and deliberations comprising part

of a process by which governmental decisions and policies are formulated," *NLRB v. Sears,*

*Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal quotation marks omitted).  The purpose of

the privilege is "[t]o encourage candor [and] improve[] agency decisionmaking" by "blunt[ing]

the chilling effect that accompanies the prospect of disclosure."  *Sierra Club*, 141 S. Ct. at 785.

---

[2] Although the Coast Guard makes cursory mention of Exemptions 7(A) and 7(C) in its brief,
Dkt. 14 at 11, the Coast Guard did not invoke either exemption in its response to Plaintiff's
FOIA request, Dkt. 14 at 2–3 (Def.'s SUMF ¶¶ 1–4), and does not support the application of
either exemption in the declaration it offers in support of its motion for summary judgment, Dkt.
14-1 at 1–7 (Judge Decl. ¶¶ 1–13).

To carry its burden on summary judgment, an agency invoking the privilege must demonstrate that the withheld record is both pre-decisional and deliberative. *See id.* at 785–86.

A record is pre-decisional if it was "generated before the adoption of an agency policy," *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980), and "if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made," *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (internal quotation marks and citations omitted). A record is deliberative if it "reflects the give-and-take of the consultative process." *Coastal States Gas Corp.*, 617 F.2d at 866; *see also Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997); *Jud. Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 129 (D.C. Cir. 2005). When invoking the privilege, the agency must explain "the nature of the decisionmaking authority vested in the office or person issuing the disputed document(s), and the positions in the chain of command of the parties to the documents." *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982) (internal quotation marks and citation omitted). In cases involving the deliberative-process privilege, the D.C. Circuit, accordingly, asks whether the agency has offered evidence sufficient to establish "the 'who,' i.e., the roles of the document drafters and recipients and their places in the chain of command; the 'what,' i.e., the nature of the withheld content; the 'where,' i.e., the stage within the broader deliberative process in which the withheld material operates; and the 'how,' i.e., the way in which the withheld material facilitated agency deliberation." *Jud. Watch, Inc. v. Dep't of Just.*, 20 F.4th 49, 56 (D.C. Cir. 2021); *see also Watkins Law & Advocacy, PLLC v. Dep't of Just.*, 2023 WL 5313522, at *10–12 (D.C. Cir. Aug. 18, 2023).

2.     *Exemption 6*

Exemption 6 "protects information about individuals in 'personnel and medical files and similar files' when its disclosure 'would constitute a clearly unwarranted invasion of personal privacy.'" *Shapiro v. Dep't of Justice*, 153 F. Supp. 3d 253, 257 (D.D.C. 2016) (quoting 5 U.S.C. § 552(b)(6)).  The exemption can sweep in "bits of personal information, such as names," *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006), but the mere fact that an agency file or record contains personal, identifying information is not enough to invoke Exemption 6— the information must also be "of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion," *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002).

To make that determination, "the Court [must] employ[] a balancing test, weighing 'the private interest involved (namely the individual's right of privacy) against the public interest (namely, the basic purpose of [FOIA], which is to open agency action to the light of public scrutiny).'" *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 304 (D.D.C. 2007) (quoting *Jud. Watch*, 449 F.3d at 153).  "In undertaking this analysis, the [C]ourt is guided by the instruction that, under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in [FOIA]." *Nat'l Ass'n of Home Builders*, 309 F.3d at 32 (internal quotation marks omitted).

3.     *Foreseeable Harm*

Finally, an agency may "withhold information" pursuant to these FOIA exemptions "only if . . . the agency reasonably foresees that disclosure would harm an interest protected by [the] exemption . . . or . . . the disclosure is prohibited by law."  5 U.S.C. 552(a)(8)(A)(i).  In adopting this requirement in 2016, "Congress was especially concerned about agencies'" overuse of

"Exemption 5 and the deliberative process privilege," *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 104 (D.D.C. 2019), although the requirement applies to other exemptions as well.  The requirement "impose[s] an independent and meaningful burden on agencies." *NRDC v. EPA*, 2019 WL 3338266, at *1 (S.D.N.Y. July 25, 2019). Notably, "[i]n the context of withholdings under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369–70 (D.C. Cir. 2021).

**B.     The Coast Guard's Withholdings**

1.     *The Investigating Officer's Report*

The Coast Guard defends its decision to withhold the 21-page investigative report (with one minor exception) based on Exemption 5's deliberative-process privilege.  Dkt. 14-1 at 4–5 (Judge Decl. ¶¶ 7–10).  The agency does not invoke Exemption 6 with respect to the investigative report.  *Id.*  The Court must, accordingly, decide whether the agency has carried its burden of demonstrating that the investigative report is pre-decisional and deliberative.

As an initial matter, Plaintiff does not dispute the pre-decisional nature of the investigative report, nor could she.  The investigative report was "prepared in order to assist an agency decisionmaker," *Petroleum Info. Corp.*, 976 F.2d at 1434 (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975))—here, the LCD commanding officer— "in arriving at his decision," *id.*—here, the Coast Guard's final response to Plaintiff's OIG complaint, which was memorialized in the Final Action Memorandum.  *See* Dkt. 14-1 at 9 (Final Action Memo.) ("My findings of fact, opinions, and directed actions are based upon an

administrative investigation convened by this unit prior to my arrival.").  Plaintiff does, however, dispute whether the investigative report is—in whole or in part—deliberative.

In considering whether the investigative report is deliberative, the Court returns to *Judicial Watch, Inc. v. U.S. Department of Justice*, 20 F.4th 49, 57 (D.C. Cir. 2021), and concludes that, here, the Coast Guard has largely answered the "'who,' 'what,' 'where,' and 'how' of the deliberative process and the role played by the withheld material."  Investigating Officer Royce James was tasked with providing a commanding officer (i.e., the who) a report summarizing the administrative investigation he conducted regarding Plaintiff's OIG complaint (i.e., the what).  Dkt. 14-1 at 2 (Judge Decl. ¶ 4).  This investigative report preceded the Coast Guard's Final Action Memorandum, the final document in the Coast Guard's deliberative process representing the agency's final position (i.e., the where).  *Id.*  Finally, the agency at least gestures at the way in which withholding the report will facilitate agency deliberations (i.e., the how), primarily by noting that the investigative report preceded the Final Action Memorandum and was understood by its drafter to be a pre-decisional document covered by the deliberative process privilege.  *Id.* at 4 (Judge Decl. ¶ 7).  The agency notes (1) that the report included a legend asserting that it was a deliberative document exempt from public disclosure, which "may well have been one of the reasons that the investigating officer felt free to take the initiative and go beyond the scope of the convening order;" that "[r]elease of the [r]eport might stifle such initiative in the future;" and that release of the report "would also serve to confuse the public with regard to the Coast Guard's position with regard to [Plaintiff's] complaint."  *Id.* at 4–5 (Judge Decl. ¶¶ 7–9).  But even there, without additional detail about the structure and contents of the report and the procedures that were followed, the Court cannot determine *how* the investigative report in its entirety was deliberative.  *See Jud. Watch, Inc.*, 20 F.4th at 56 (noting

11

that the agency had told the court "nothing about what deliberative process is involved, that is, what procedure DOJ followed to finalize Acting Attorney General Yates's statement" (internal quotation marks and citation omitted)).

For these reasons, the Court is persuaded that much, if not all, of the investigative report falls within Exemption 5's deliberative-process privilege. One problem, however, precludes the Court from entering summary judgment in favor of the Coast Guard at this time.

The Coast Guard has failed to offer sufficient detail about the contents of the report to permit the Court to determine whether it contains any segregable, non-deliberative material. *See Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). FOIA requires that agencies disclose "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Under controlling precedent, this Court "must make specific findings of segregability regarding the documents to be withheld" before "approving the application of a FOIA exemption." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). Although the precise standard the Court is required to apply "is not clear," *id.* at 1117, here, the Court cannot discharge its obligation without additional information regarding the contents of the investigative report and the agency's efforts to segregate non-exempt material.

According to the declaration the Coast Guard offers in support of its motion for summary judgment:

> [T]wo senior Coast Guard officers (the LDC Commanding Officer and the Commanding Officer of the Legal Services Command) each considered whether the pages that were withheld in their entirety—the Investigating Officer's Report and Exhibit 15—contained information that could be segregated from the material that was exempt under the applicable FOIA exemptions. After reviewing the withheld pages, both commanding officers determined that after applying the deliberative process privilege and redact[ing] the clearly identifiable privacy interest, so little non-exempt material remained that it was

either non-responsive or essentially meaningless.  They therefore determined
that all reasonably segregated material was being provided.

Dkt. 14-1 at 7 (Judge Decl. ¶ 13).  "Whatever standard applies, that is too little information to

allow the Court to conduct even a cursory review," *Pejouhesh v. U.S. Postal Serv.*, 2019 WL

1359292, at *8 (D.D.C. Mar. 26, 2019), for at least three reasons.

To start, the agency's explanation invites confusion because the Coast Guard never

claimed Exemption 6 with respect to the investigative report, *see* Dkt. 24 at 7, but the agency's

declaration states that the two officers conducted a segregability analysis with respect to

withholdings under both Exemption 5 *and* Exemption 6, Dkt. 14-1 at 7 (Judge Decl. ¶ 13).  It is,

of course, possible that the declaration is simply imprecise and that the reviewing officers

applied only Exemption 5 to the investigative report, while they applied Exemptions 5 and 6 to at

least portions of Exhibit 15.  But that reading of the declaration is undercut by the Coast Guard's

own reply brief, which asserts that it is not "surprising" that the Coast Guard withheld the

investigative report in full given the "highly personal nature of the medical conditions and

performances of the officer candidates that are at issue in" it.  Dkt. 24 at 13.  In any event, the

Coast Guard bears the burden of proof on segregability, and, given the parties' asymmetrical

access to the underlying evidence, greater clarity is required to satisfy that burden.  In short,

neither Plaintiff nor the Court should have to guess about how the agency conducted its

segregability review.

In addition, as Plaintiff argues, purely factual material is generally not covered by

Exemption 5's deliberative-process privilege, and, to the extent that the investigative report

contains factual background—e.g., when Plaintiff attended OCS, when she filed her OIG

complaint, or when her complaint was referred to Captain James for investigation—the agency

has yet to explain why those facts cannot be disclosed.  *Savage v. Dep't of Navy*, 2021 WL

4078669, at *2 (D.D.C. Sept. 8, 2021), is instructive on this point.  In that case, as in this one, the plaintiff sought both an investigating officer's initial report and a commanding officer's final report.  *Id.* at *1–2.  The Navy produced the initial report with redactions, primarily made to the "Executive Summary" and "opinions" sections.  *Id.* at *5 n.5.  The *Savage* court rejected the plaintiff's argument that purely factual material could have been segregated from the report at issue there, reasoning that an executive summary "is a blend of facts and analysis, and it presents the writer's assessment and conclusions in addition to proposed factual findings."  *Id.*  Here, in contrast, the agency has not only withheld the investigative report in full, but it has also failed to offer any description of the structure or contents of the report, which might permit the Court to make the type of assessment that the *Savage* court made.  *See Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977) (an agency should "describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document"); *see also id.* n.54 ("If a document itself contains many pages of information, and there are logically divisible sections for which the proportion and distribution description would differ significantly, *it should be described by section* rather than as a whole." (emphasis added)).

Finally, the Coast Guard does not expressly address the foreseeable harm requirement in either its briefs or the supporting declaration.  To be sure, the Coast Guard's declaration includes at least two assertions, mentioned above, that might arguably support a finding of foreseeable harm: it asserts that (1) Captain James "may well have . . . felt free" to "go beyond the scope of the convening order" because he believed the report would remain confidential and that "[r]elease of the [r]eport might stifle such initiative in the future," and (2) release of the report could engender public confusion.  Dkt. 14-1 at 4–5 (Judge Decl. ¶¶ 8–9).  Although far from

clear, those assertions might ordinarily suffice (albeit barely) to establish that the agency, in fact, made the required foreseeable harm determination.  But, in this context, the segregability and foreseeable harm inquiries intersect, and the Court cannot conclude on the present record that the agency considered, and decided, that the disclosure of *any* portion of the investigative report would cause foreseeable harm.  The Coast Guard's "initiative" argument, for example, might justify redacting those portions of the investigative report that went beyond the "convening order," and the agency's "public confusion" argument might justify redactions that differ in material respects from the findings included in the Final Action Memorandum.  But, on the present record, the Court cannot conclude that these concerns are sufficient to withhold the report in its entirety.

The Court, accordingly, concludes that the Coast Guard has yet to carry its burden of justifying its decision to withhold the investigative report in its entirety.  But because the Coast Guard may still be able to offer an explanation sufficient to sustain that withholding, the Court is also unpersuaded that Plaintiff is entitled to prevail with respect to this document—and, indeed, the Court lacks sufficient information to decide which portions, if any, of the investigative report should be disclosed.  The Court will, accordingly, deny both Plaintiff's and the Coast Guard's motion for summary judgment with respect to the investigative report.

2.    *Exhibit 15*

Plaintiff's consolidated FOIA request also sought the witness statements that accompanied the investigative report.  Because both parties focus on "Exhibit 15," which includes more than just these witness statements, the Court will follow their lead.

Exhibit 15 "consists of thirty-eight pages which were withheld in their entirety."  Dkt. 14-1 at 5 (Judge Decl. ¶ 11).  According to the Coast Guard, Exhibit 15 contains: (1) eight pages of

Uniform Code of Military Justice ("UCMJ") rights forms, containing descriptions of alleged

misconduct, filled out and signed by four witnesses, *id.* at 6 (Judge Decl. ¶ 12); (2) six pages of

an email from a former officer candidate to the investigating officer with an attached eight-page

performance evaluation from that same former officer candidate, Dkt. 24 at 10 & n.3; (3) a one-

page email from a different officer candidate to the investigating officer, *id*. at 11; and (4)

fourteen pages of "simpl[e] summaries of interviews of witnesses," Dkt. 14-1 at 5 (Judge Decl.

¶ 11).  As noted above, Exhibit 15 also includes (or seems to include) a one-page email from a

medical officer that the Coast Guard produced with names of two officers redacted.  *Id.* at 7

(Judge Decl. ¶ 12).  The Coast Guard defends its withholding under both Exemption 5 and

Exemption 6, *id*. at 6–7 (Judge Decl. ¶¶ 11–12), and the Court will address each component of

Exhibit 15 in turn.

> a.  The UCMJ Rights Forms

With respect to the UCMJ rights forms that were filled out and signed by four witnesses,

the Coast Guard argues that the forms are not responsive to Plaintiff's consolidated FOIA request

because they are not "witness statements."  Dkt. 14 at 8.  As explained in the the Coast Guard's

declaration:

> Ms. Mountgordon requested the witness statements enclosed with the
> [investigative] [r]eport.  Exhibit 15 to the [r]eport was labeled as witness
> statements, although not all the material in this exhibit was actually a witness
> statement.
>
> *     *     *
>
> . . . Exhibit 15 includes eight pages of Uniform Code of Military Justice and
> Miranda/Tempia warning rights forms that were filled out and signed by four
> witnesses.  These forms document the alleged misconduct the investigating
> officer believed the witnesses may have been involved in, but we know from the
> Final Action Memorandum that no one was charged with misconduct as a result
> of this investigation.  The forms do not contain any actual statements by the
> witnesses other than checking acknowledgments of rights and an agreement to

make a statement or answer questions without consulting a lawyer.  As a result, these pages are not responsive to the request and furthermore could mislead the public into believing the witnesses engaged in misconduct.

Dkt. 14-1 at 5–6 (Judge Decl. ¶¶ 11–12).  The Court agrees that the completed UCMJ rights forms are not "witness statements" and, thus, are not responsive to Plaintiff's FOIA request.

FOIA "requires every federal agency, upon request, to make 'promptly available to any person' any 'records' so long as the request 'reasonably describes such records.'"  *Assassination Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting 5 U.S.C. § 552(a)(3)).  Construed in light of FOIA's "general philosophy of full agency disclosure," *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 754 (1989) (quoting *U.S. Dep't of Air Force v. Rose*, 425 U.S. 352, 360 (1976)), this means that agencies have "a duty to construe a FOIA request liberally," *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), but, at the same time, they must construe a request "as drafted" and not as the FOIA requester (or the agency) "might wish it was drafted," *Miller*, 730 F.2d at 777.

As relevant here, there is no dispute that the request sought only "[w]itness statements enclosed with the Investigator's Report."  Dkt. 1-5 at 9.  The question, then, is whether the phrase "witness statements," even if liberally construed, includes the UCMJ rights forms.  It does not.  Consistent with common usage, Black's Law Dictionary defines (1) a "formal witness statement" to mean "[a] recorded account, made under oath or in preparation for a court proceeding, of a person's knowledge of fact about something" and (2) an "informal witness statement" to mean "[a]n oral assertion made without intent or expectation that it will be used in a legal proceeding, such as a comment or exclamation made at the time of an event."  *Witness Statement*, Black's Law Dictionary (11th ed. 2019).  In the present context, the phrase is best understood to mean a statement offered by a witness regarding facts relevant to the investigation.

It does not include any and all words uttered or assented to by someone who was a witness; no one, for example, would plausibly understand the phrase to include an email from a witness asking about parking at the site of an interview, or a request to reschedule an interview due to poor health.

Understood in this manner, a potential witness' initials on a form indicating that the witness (or "suspect") understands his or her rights, and a checkmark next to a box indicating an agreement to answer questions without a lawyer does not constitute a "witness statement." *See* Dep't of Homeland Security, U.S. Coast Guard UCMJ and Miranda/Tempia Rights, https://www.dcms.uscg.mil/Portals/10/CG-1/PSC/PSD/docs/CG_5810E.PDF?ver=2017-03-23-135524-690 (last visited Aug. 29, 2023).  To the contrary, like a criminal defendant who waives his or her *Miranda* rights, these indica of assent precede the interview and any statement which the witness might agree to provide.  Plaintiff is, of course, free to file a new FOIA request asking for any UCMJ rights forms that were executed in the course of Captain James' investigation. For present purposes, the Court merely concludes that those waiver forms are not "witness statements."

The Court will, accordingly, grant summary judgment in the Coast Guard's favor with respect to the UCMJ rights forms.

        b.  The Emails and Witness Statement Summaries

The Coast Guard's efforts to shield the remaining portions of Exhibit 15 are more problematic.  Those materials consist of "summaries of interviews of witnesses" and two "e-mails to the investigating officer from former officer candidates, now Coast Guard officers." Dkt. 14-1 at 5 (Judge Decl. ¶ 11).  One of those emails, in turn, includes an attachment containing "the candidate's performance evaluations while at OCS and other documentation

from her personnel file." *Id.* at 6 (Judge Decl. ¶ 11).  According to the Coast Guard's declarant, these records were withheld pursuant to Exemption 5's deliberative-process privilege and Exemption 6.  *Id.*  The Court does not doubt that some of this information, such as the identities of those accused of wrongdoing and the identities of those who were allegedly victimized, was properly withheld.  The problem is that the supporting declaration conflates Exemptions 5 and 6 and offers too little detail to sustain the withholdings on the present record.

As an initial matter, the Court notes that the Coast Guard's declarant fails to indicate whether Exemption 5 and 6 offer independent grounds to withhold all of the material at issue, or whether Exemption 5 applies to some of the material, and Exemption 6 applies to other portions of the material.  And, if it is the latter, the declarant fails to identify which portions are withheld under which of the exemptions.  That matters, of course, because the standards for the two exemptions are different.  Exemption 6, for example, requires the agency to demonstrate "that a substantial invasion of privacy will occur if the documents are released," and, to carry that burden, the agency must offer "affidavits" that "'contain reasonable specificity.'"  *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (quoting *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)).  The Court must then weigh the cost of that invasion of privacy against the public interest in disclosure.  *Id.*  Under Exemption 5, in contrast, the agency must demonstrate that the material at issue is pre-decisional and deliberative.  Conflating these standards, the Coast Guard's declarant treats Exemptions 5 and 6 together, in a single paragraph, and asserts: "Releasing this information would discourage frank and open discussion [Exemption 5?] of the type of highly personal and private information [Exemption 6?] necessary to arrive at informed decision making [Exemption 5?] regarding allegations of supervisors mistreating junior personnel [Exemption 6?] . . . ."  Dkt. 14-1 at 6 (Judge Decl. ¶ 11).

19

In short, the declaration fails to provide detail sufficient to permit the Court to determine what material was withheld pursuant to which exemption and the specific basis for each withholding.

Other ambiguities abound.  The declarant avers, for example, that "[m]any of these statements were simply summaries of interviews of witnesses by the investigating officer" without stating, definitively, that all of the witness statements—as opposed to the two emails—were summaries of interviews prepared by Captain James, rather than summaries prepared by someone else of interviews conducted by Captain James.  *Id.* at 5 (Judge Decl. ¶ 11).  And, more significantly, the declaration does not even attempt to distinguish between Captain James' mental impressions or analyses and pure unadorned facts, the release of which would reveal nothing about Captain James' assessment of the allegations.  To be sure, factual summaries fall under Exemption 5's deliberative-process privilege to the extent they "also contain [or reflect] the mental impression of [agency officials]" such as "recommendations and thoughts concerning . . . investigation[s]," *Williams & Connolly LLP v. SEC*, 729 F. Supp. 2d 202, 213 (D.D.C. 2010), but not every summary is deliberative, *see*, *e.g.*, *Gold Anti-Trust Action Comm. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 762 F. Supp. 2d 123, 137 (D.D.C. 2011) ("[S]traightforward *factual* recounting of a meeting . . . detailing what each of the participants said . . . [wa]s not properly . . . withheld under Exemption 5." (emphasis in original)).  In its reply brief, the agency attempts to bolster its position, arguing that the summaries "represent the Investigating Officer's impressions of what the witnesses said, including a determination of what the witnesses said that was important to his investigation."  Dkt. 24 at 12.  Counsel's argument, however, is not evidence and, in any event, even this late-asserted (and unsworn) characterization of the summaries lacks sufficient specificity.

Similarly, the declaration asserts that one of the emails in Exhibit 15 included an attachment, containing a "candidate's performance evaluations . . . and other documentation from her personnel file."  Dkt. 14-1 at 6 (Judge Decl. ¶ 11).  Although the Court is prepared to presume that most information contained in a personnel file falls within the scope of Exemption 6, a reference to "other documentation" tells the Court nothing and, even if presumptively subject to Exemption 6, such a vague reference precludes the Court from engaging in the required balancing.

Nor does the declaration offer adequate explanation for withholding the witness statement summaries in their entirety.  Again, the Court does not doubt that much—and perhaps all—of the material is properly withheld.  But more detail is necessary to permit the Court to assess whether the answer is in fact much—or all.  Why not include the ranks of the witnesses with whom Captain James spoke, for example?  It might be the case that there are so few potential holders of a given rank that a knowledgeable member of the public could infer who the witness was from her or his rank.  But, if so, the declarant needs to offer some explanation.  Similarly, it is easy to imagine how releasing purely factual material from the witness interviews might reveal the identity of certain witnesses.  *Cf. Horvath v. U.S. Secret Serv.*, 419 F. Supp. 3d 40, 48 (D.D.C. 2019) (referencing an agency declaration that explained that the redacted information "concern[ed] a small group of individuals who are known to each other and to the Plaintiff and who are easily identifiable from the details contained in the withheld information").  The Court's speculation, however, is no substitute for a factual proffer from a knowledgeable agency witness.

Finally, the Court notes that the Coast Guard's declaration, once again, says nothing about foreseeable harm.  That omission, alone, provides sufficient basis to deny the Coast Guard's motion.

The Court will, accordingly, deny without prejudice the Coast Guard's motion for summary judgment with respect to the witness statement summaries and two emails.  But because the Coast Guard may still be able to offer an explanation sufficient to sustain all its withholdings—and will almost certainly be able to support some of those withholdings—the Court will also deny Plaintiff's cross-motion.

c.  Email from Medical Officer

In contrast to the other material included in Exhibit 15, the Coast Guard released the one-page email from "a medical officer to the investigating officer describing a policy contained in [a] Medical Manual," redacting "only the names of the two officers."  Dkt 14-1 at 7 (Judge Decl. ¶ 12).  Although, as discussed below, it is at times appropriate for an agency to redact the names of individuals associated with an investigation—such as when the disclosure would cause reputational harm or would invite harassment or reprisals, while doing relatively little to serve the public interest—the Coast Guard offers *no* explanation for why the disclosure of the names of these officers "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The evidentiary gap left by that omission, moreover, is highlighted by the declaration attached to Plaintiff's opposition and cross-motion for summary judgment, in which the investigating officer reveals his own rank and identity.  *See* Dkt. 22-1 at 1.

Given the Coast Guard's failure even to attempt to identify any privacy interest that might justify withholding the names of these two officers—neither of who was accused of wrongdoing, was a victim, or was a witness—and both of whom had attained officer rank—the

Court will grant Plaintiff's cross-motion and order the Coast Guard to release an unredacted version of this email.

       3.     *Final Action Memorandum*

Finally, the Court turns to the limited redactions the Coast Guard made to the Final Action Memorandum.  The agency produced the seven-page document nearly in its entirety, redacting only the names (and apparently the ranks) of individuals pursuant to Exemption 6.  *See* Dkt. 14-1 at 9–15.  The Court is persuaded that Exemption 6 applies in part—but still needs convincing with respect to a few of the redactions.

Plaintiff argues that Exemption 6 does not justify the redactions of the names and ranks of alleged perpetrators and victims of bullying, because any privacy interests are "outweighed by the public interest in ensuring that the [Coast Guard] is" not "promoting and rewarding officers or instructors who have actively engaged in bullying of the students in their charge."  Dkt. 23-1 at 16.  To determine whether the Coast Guard lawfully redacted the names and ranks of persons identified in the Final Action Memorandum, the Court must balance the privacy interest of those individuals against the public interest in disclosure.  To do so, the Court "must first determine whether . . . disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest."  *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989) (emphasis in original).  If so, the Court must then "weigh that privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, disclosure would [constitute] a clearly unwarranted invasion of personal privacy."  *Id.*  As explained in the Coast Guard's declaration, the redacted names include (1) former officer candidates, "most of whom are now Coast Guard officers," (2) OCS instructors, and (3) "the

Coast Guard Investigative Service special agent [whom] the Final Action Memorandum was routed through," Dkt. 14-1 at 3 (Judge Decl. ¶ 5).  The Court will address each in turn.

a. Names

With respect to the officer candidates, there is no serious dispute that they have a substantial privacy interest in their anonymity.  Grudgingly, Plaintiff acknowledges that "there may arguably be some justification for withholding the names" of the alleged victims of bullying.  Dkt. 23-1 at 15.  And, more affirmatively, the Coast Guard posits that disclosing their names would "cause these individuals reputational harm in their personal and professional lives." Dkt. 14-1 at 3 (Judge Decl. ¶ 5).  The Court is persuaded that these former officer candidates "have a substantial privacy interest," *Horvath.*, 419 F. Supp. 3d at 47, in avoiding any disclosures that "would associate [them] with internal [Coast Guard] investigations and threatens to identify them as [victims of] . . . alleged workplace misconduct," *id.* (quoting *Kearns v. Fed. Aviation Admin.*, 312 F. Supp. 3d 97, 111 (D.D.C. 2018)).[3]

The substantial privacy interests of the OCS instructors identified in the Final Report is equally evident.  Plaintiff's argument treats allegations of bullying as confirmed misconduct, asserting that the privacy interest of alleged perpetrators is *de minimis*.  Dkt. 23-1 at 15–16.  The Court disagrees.  "[I]ndividuals named as witnesses *or as subjects* of an investigation . . . have a discernable privacy interest . . . in avoiding the embarrassment and potential harassment that may result from public disclosure of their association with [an]. . . Inspector General's inquiry."

---

[3]  Although the Coast Guard's declarant does not specify that all of the officer candidates identified in the Final Report were alleged victims of abuse, as opposed to witnesses to the abuse of others, the Court can discern from context that they are all alleged victims.  But in any event, the Court's conclusions would not differ if they were, instead, witnesses to the abuse of others. This is, however, yet another example of the lack of diligence that went into preparing the Coast Guard's motion for summary judgment.

*Cotton v. Adams*, 798 F. Supp. 22, 26 (D.D.C. 1992) (emphasis added).  Here, the Final Report represents that "[t]he investigation did not provide sufficient facts to make appropriate determinations and disposition[s]" and that, as to one of the alleged wrongdoers, "the investigation contained a bare allegation."  Dkt. 14-1 at 14.  The subjects of government investigations have a strong privacy interest in maintaining their confidentiality, particularly when, as here, the investigation failed to disclose evidence sufficient to substantiate the allegation of wrongdoing or misconduct.  *See ACLU v. U.S. Dep't of Justice*, 750 F.3d 927, 932 (D.C. Cir. 2014); *Am. Immigr. Laws. Ass'n. v. Exec. Off. for Immigr. Rev*., 830 F.3d 667, 675–76 (D.C. Cir. 2016).

The existence of a substantial—or even strong—privacy interest, however, does not end the Court's inquiry; the Court must also consider the strength of the public interest in disclosure and must determine whether that interest outweighs the relevant privacy interest.  *Prison Legal News*, 787 F.3d at 1147.  Here, the Court can discern no significant public interest in the disclosure of the names of those who were allegedly bullied while at OCS.  The public interest is in the bullying and not in the identity of the victims.  Plaintiff offers no meaningful response with respect to the identity of the alleged victims.  She does argue, however, that release of the names of the instructors who allegedly engaged in that bullying would serve an important public interest: it would "ensur[e] that the" Coast Guard is not "promoting and rewarding officers or instructors who have actively engaged in bullying."  Dkt. 23-1 at 16.  But Plaintiff, once again, ignores the fact that the Final Report failed to substantiate the allegations of wrongdoing, and an *allegation* of misconduct is not the same as *confirmed* bullying.  To be sure, there is a compelling public interest in knowing how the government handles allegations of misconduct.  But, here, "the information already released largely satisfies this public interest [by] provid[ing]

25

a picture of the allegation[s] made and the steps taken" by the Coast Guard "to investigate the allegation[s]." *Horvath*, 419 F. Supp. 3d at 48 (internal quotation marks omitted).  Knowing who was accused of misconduct would undoubtedly add context.  The Court is persuaded, however, that the privacy interests of those accused of misconduct outweigh the public interest in knowing their identity, because the allegations are unsubstantiated, yet disclosure could cause substantial reputational and professional harm to the alleged wrongdoer.  *See Holy Spirit Ass'n for Unification of World Christianity, Inc. v. U.S. Dep't of State*, 526 F. Supp. 1022, 1033 (S.D.N.Y. 1981).

This, then, leaves the question of foreseeable harm.  Although the Coast Guard does not use this nomenclature in its declaration or briefs, the Court is satisfied that the agency has carried its burden of demonstrating that it is "reasonably foresee[able]" that disclosure of the names of the officer candidates (the alleged victims) and the OCS instructors (the alleged abusers) "would harm an interest protected by" Exemption 6.  5 U.S.C. § 552(a)(8)(A)(i)(I).  As the Coast Guard's declaration explains, disclosure of the names of those who were allegedly bullied "would invade their privacy and could cause these individuals reputational harm in their personal and professional lives," and disclosure of the names of the alleged bullies "would certainly be damaging to [their] careers and likely personal reputation[s]."  Dkt. 14-1 at 3 (Judge Decl. ¶ 5).

The Court will, accordingly, grant summary judgment in favor of the Coast Guard with respect to its redactions of the names of the OCS candidates and instructors from the Final Report.

   b.  Ranks

Plaintiff's challenge to the redaction of "military ranks or positions of any of the individuals involved [in the Final Action Memorandum]" stands on somewhat firmer ground.

26

Dkt. 23-1 at 15.  True, ranks—like names—can fall within the ambit of Exemption 6's

protections if "disclosure . . . would constitute a clearly unwarranted invasion of personal

privacy."  5 U.S.C. § 552(b)(6); *Hudson v. Dep't of Army*, 1987 WL 46755, at *3–11 (D.D.C.

Jan. 29, 1987) (applying Exemption 6 to the rank of military personnel).  But, here, the Coast

Guard not only fails to offer any evidence that disclosure of the ranks of those mentioned in the

Final Report might indirectly identify who they are, it fails even to acknowledge that it has

redacted this information in the first place.  There is good reason, however, to believe that

Plaintiff is correct—in the Final Action Memorandum, many redactions appear as follows:

"Then-[redacted text]."  *See, e.g.*, Dkt. 14-1 at 12.  The prefix "then-" does not typically precede

a name unaccompanied by rank (for example, "then-Jane Doe" makes little sense, but then-

Lieutenant Jane Doe" does).

Although the Court might ordinarily treat the Coast Guard's omission as dispositive and

enter judgment against it on this narrow issue, the redactions potentially implicate the interests of

third parties, who cannot be blamed for the Coast Guard's omission.  *Cf. Brennan Ctr. for Just.*

*at N.Y.U. Sch. of L. v. U.S. Dep't of Just.*, 2021 WL 2711765, at * 8 (D.D.C. July 1, 2021).  The

Court will, accordingly, deny both the Coast Guard's motion and Plaintiff's cross-motion with

respect to the omitted ranks, without prejudice.

c.  Coast Guard Investigative Service Special Agent

Finally, the Coast Guard redacted "the name of the Coast Guard Investigative Service

special agent [whom] the Final Action Memorandum was routed through" from the report.  Dkt.

14-1 at 3 (Judge Decl. ¶ 5).  The Coast Guard offers no support for this redaction and never

explains whether or how revealing that individual's name would invade any non-*de-minimis*

privacy interest.  As just explained, that would ordinarily provide ample basis to grant summary

judgment in favor of Plaintiff. But because this issue also involves the potential privacy interest of a third party, the Court will provide the Coast Guard with a final opportunity to support its assertion of Exemption 6 and will, accordingly, deny both the Coast Guard's motion for summary judgment and Plaintiff's cross-motion without prejudice.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's motion for summary judgement, Dkt. 14, is **GRANTED** in part and **DENIED** in part, and that Plaintiff's cross-motion for summary judgment, Dkt. 22; Dkt. 23, is **GRANTED** in part and **DENIED** in part.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  August 30, 2023